**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1930-22

Estate of ALICE TRAINOR, by
and through LINDA LACERDA, as
administrator of the Estate of
ALICE TRAINOR, and LINDA
LACERDA, individually and on
behalf of all heirs of Estate of
ALICE TRAINOR,

    Plaintiff-Appellant,

v.

ACTIVE DAY OF BRICK,
SENIOR CARE CENTERS OF
AMERICA, INC., d/b/a ACTIVE
DAY, ADSC HOLDINGS, INC.,

    Defendant-Respondent.

_____

Submitted March 12, 2024 – Decided April 3, 2024

Before Judges Enright and Whipple.

On appeal from the Superior Court of New Jersey, Law Division, Ocean County, Docket No. L-2138-21.

Law Office of Patrick Trainor, LLC, attorneys for appellants (Patrick Trainor, on the briefs).

Parker, McCay, PA, attorneys for respondent (J. Brooks DiDonato and Ashley A. Varghese, on the briefs).

PER CURIAM

Plaintiffs—the Estate of Alice Trainor, by and through Linda Lacerda as Administrator and Lacerda individually and on behalf of all heirs of the Estate— appeal from a January 20, 2023 order granting summary judgment to defendant, Active Day of Brick, Senior Day Care Centers of America, Inc., d/b/a Active Day, ADSC Holdings, Inc. We affirm.

Decedent, Alice Trainor, was living with vascular dementia while she was attending adult day health care services at defendant's Active Day of Brick's facility. On January 7, 2020, 89-year-old Alice began walking toward the bathroom at defendant's facility, when another participant in the day program attempted to help her. Kellie Piaskowski, defendant's activities manager, intervened, returned the other participant to her seat, and then assisted Alice in proceeding toward the bathroom. Piaskowski stated in her deposition:

> I was attempting to guide Alice to the bathroom. I had my hand, like open palm on her back, and I had my other hand under her arm. Under like her elbow. Like that. So I was attempting to like guide her.

2

> We had not taken—you know, we were nowhere near the bathroom. We were in what is considered the activities/dining room. Alice was kind of like shuffling her feet a little bit . . . .
>
> She tripped over her feet. They got kind of like bundled, kind of bunched up, and she fell flat down. And she banged her face onto the floor.

Alice was transported by ambulance to Ocean Medical Center, where she was treated for a contusion on her forehead with a superficial stellate laceration, a contusion near her left eyebrow, an abrasion on the bridge of her nose, and tenderness in her right shoulder and cervical spine. She was treated and released to rest at home with her daughter. After being seen by her primary physician, Alice received no further medical treatment for her fall injuries and returned to Active Day about a week later. After a few weeks, Alice was found unresponsive at home and taken to the hospital where her condition deteriorated. Alice was sent home for hospice care on February 18 and passed away at home on March 15, 2020. The death certificate listed her cause of death as respiratory failure due to congestive heart failure.

Plaintiffs filed suit on August 19, 2021, raising claims of simple negligence. In particular, the complaint alleged that defendant had a duty to provide Alice with a safe environment but failed to do so, resulting in Alice's sustaining severe injuries to her face, head, and body. Other counts asserted

3

negligent hiring and negligent staffing of the facility. The Estate also asserted a survivor's claim and a claim for negligent infliction of emotional distress.

Plaintiffs moved to amend the complaint to add a claim of wrongful death, but the motion was denied as untimely. Defendant moved for summary judgment, arguing plaintiffs' claims failed because they had no medical expert to support them. The trial judge granted summary judgment on January 20, 2023, finding plaintiffs had not provided an expert medical opinion asserting any causal relation between the alleged negligence and the injuries Alice suffered. This appeal followed.

We review a ruling on summary judgment de novo, applying the same legal standard as the trial court. Conley v. Guerrero, 228 N.J. 339, 346 (2017). Thus, we consider, as the trial judge did, "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 445-46 (2007) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 536 (1995)). Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories[,] and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party

A-1930-22

is entitled to a judgment or order as a matter of law." <u>Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co.</u>, 224 N.J. 189, 199 (2016) (quoting <u>R.</u> 4:46-2(c)).

Plaintiffs argue the trial court erred in granting summary judgment to defendant. They argue defendant maintained a 30-to-1 ratio of patients to staff[1]—well in excess of the state-mandated ratio of 9-to-1 and the Medicaid required ratio of 5-to-1. Citing <u>Tierney v. St. Michael's Med. Ctr.</u>, 214 N.J. Super. 27, 30 (App. Div. 1986), plaintiffs argue that, because of the extreme imbalance between patients and caregivers, the finder of fact can rely on the theory of res ipsa loquitur to infer defendant's "lack of due care" and, therefore, negligence. The trial judge rejected the argument unequivocally, saying "[t]his is not . . . under any stretch of the imagination, it's not res ipsa loquitur."

Plaintiffs argue medical causality is not in question, and a jury does not need an expert to determine whether defendant's 30-to-1 patient-to-staff ratio was a gross deviation from the standard of care. We disagree.

---

[1] The ratio of patients to staff at defendant's facility at the time of Alice's accident is a fact in dispute, but it is immaterial to plaintiffs' claim, as will be discussed below.

A-1930-22

"The fundamental elements of a negligence claim are a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages." Shields v. Ramslee Motors, 240 N.J. 479, 487 (2020) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)).  "Ordinarily, negligence is . . . 'a fact which must be proved and which will never be presumed,' . . . [but t]he doctrine of res ipsa loquitur, where applicable, is a method of circumstantially proving the existence of negligence."  Myrlak v. Port Auth. of N.Y. & N.J., 157 N.J. 84, 95 (1999) (quoting Meny v. Carlson, 6 N.J. 82, 91 (1950) and citing Tierney, 214 N.J. Super. at 30).  "Res ipsa loquitur is not a theory of liability; rather it is an evidentiary rule that governs the adequacy of evidence in some negligence cases."  Ibid.  This theory allows a finder of fact to infer the defendant's lack of due care only when the three elements of the doctrine have been satisfied:  "(a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect."  Ibid. (quoting Bornstein v. Metropolitan Bottling Co., 26 N.J. 263, 269, (1958)).

A-1930-22

To satisfy res ipsa loquitur, then, plaintiffs would need to demonstrate that an 89-year-old falling while being assisted by a caregiver "itself ordinarily bespeaks negligence"; the environment was within "defendant's exclusive control"; and "there is no indication in the circumstances that the injury was the result of [Alice's] own voluntary act or neglect." See ibid. The first element is not readily met under this record and plaintiffs' theory of the case. Plaintiffs assert an excessive ratio of patients to staff suggests Alice was not receiving sufficient attention at the time of her accident and attempt to dispute defendant's contention she was receiving staff assistance before her fall. Regardless of the overall ratio of patients to staff that may or may not have been present at the time of Alice's accident, however, there is no evidence in the record to support an inference contradicting Piaskowski's sworn testimony she was assisting Alice when she fell. Furthermore, the scenario suggested by plaintiffs, that of an 89-year-old falling while walking unassisted, does not "ordinarily bespeak[] negligence"; it is unlikely that, even with assistance, such an accident would "ordinarily bespeak[] negligence." On this record, the third element would be difficult to satisfy as well, for similar reasons.

Finally, even when successfully proven, res ipsa loquitur only fills a gap in plaintiffs' negligence case with respect to a breach of the duty of care, not

7

with respect to the causal relationship between a purported breach and the injury suffered. The causal relationship is what the trial judge correctly found wanting here, though: "[U]nder no circumstances [is] it appropriate or permissible to allow a lay jury [to] make a determination as to medical damages suffered by [Alice] without the benefit of medical testimony." Here, the jury would have no fact-supported means of judging whether defendant's purported short-staffing or Piaskowski's helping of Alice was the proximate cause of Alice's injuries. Even if plaintiffs were able to satisfy all the elements of res ipsa loquitur, the deficiencies in their negligence claim would still not be cured. Thus, the trial judge correctly proclaimed, "under any stretch of the imagination, it's not res ipsa loquitur."

Plaintiffs' second argument, that no affidavit of merit is required, was not raised to the trial judge and, therefore, need not be addressed by us. See State v. Jones, 179 N.J. 377, 404 (2004). Moreover, the argument is irrelevant, as the trial judge never stated an affidavit of merit was necessary.

In faulting plaintiffs for failing to provide expert testimony as to causation of Alice's injuries, the trial judge was not referring to a procedural requirement such as the affidavit of merit. See N.J.S.A. 2A:53A-27. The court, instead, found plaintiffs had failed to put sufficient evidence in the

record that would permit a reasonable jury to decide the case in plaintiffs' favor. The trial judge concluded a lay jury is insufficiently knowledgeable of the specifics of elder care and assistance to competently determine whether any purported short-staffing or Piaskowski's helping Alice to the bathroom was the cause of Alice's injuries. Lacking expert testimony to that effect, the trial judge determined defendant must prevail as a matter of law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1930-22